IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MONEY TITLE, LLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:25-CV-2491-D |
| VS. | § | |
| | § | |
| HANCOCK WHITNEY BANK, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

This is a removed action arising from defendant Hancock Whitney Bank's ("HWB's") alleged failure to honor an oral promise to make a bridge loan to plaintiffs Money Title, LLC and Money Realty, LLC (collectively, "Money Title") that would have enabled Money Title to secure the timely closing of a property acquisition. HWB moves to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b). For the reasons that follow, the court grants HWB's motion to dismiss under Rule 12(b)(6), and also grants Money Title leave to replead.

I

Money Title is a title company and law firm. In March 2024 Money Title entered into an Asset Purchase Agreement ("First APA") with [non-party] Professional Land Title, LLC ("PLT"), to acquire certain of PLT's assets (the "Acquisition").[1] Under the First APA, the

---

[1] In deciding HWB's Rule 12(b)(6) motion to dismiss, the court construes Money Title's state-court original petition in the light most favorable to Money Title, as the nonmovant, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Money Title's favor. *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

Acquisition was to close on or before May 31, 2024.

To finance the Acquisition, Money Title applied for a Small Business Administration Loan ("SBA Loan") from Wells Fargo Bank ("Wells Fargo"). Wells Fargo, however, could not guarantee funding of the loan by the scheduled closing date. Accordingly, Money Title contacted HWB. Although HWB could not offer Money Title the same low interest rate that Wells Fargo had, it did offer Money Title the option of a bridge loan, once the SBA Loan application was approved. A bridge loan would ensure timely closing of the Acquisition (i.e., by May 31, 2024) while the SBA Loan was being processed.

On April 4, 2024 Money Title submitted the documents and information that HWB had requested to begin the application process. HWB informed Money Title that "from this point forward, it would be '10 days to approval . . .' of [Money Title]'s SBA Loan application." Pet. (ECF No. 1-3) ¶ 9 (omission in original). In reliance on this assurance and HWB's promise to make a bridge loan, Money Title withdrew its SBA Loan application from Wells Fargo.

HWB sent Money Title a loan commitment letter ("Commitment Letter") on May 15, 2024, stating that HWB would loan Money Title the amount it needed for the Acquisition, "subject to [Money Title's] meeting SBA's requirements." *Id.* ¶ 11. The Commitment Letter did not mention HWB's promise to provide a bridge loan to guarantee the scheduled closing date.

In late May 2024, the Small Business Administration ("SBA") notified Money Title that, although its SBA Loan application had been approved, the SBA could not continue to

process the loan until PLT resolved some issues relating to its Internal Revenue Service ("IRS") transcripts. Soon thereafter, an environmental report on one of PLT's properties (the "Property") flagged a potential issue that would likely delay approval of the SBA Loan.

To prevent further delay, Money Title and PLT signed an Amended Asset Purchase Agreement ("Second APA") on July 16, 2024 that removed the Property from the Acquisition, reduced the purchase price from $3 million to $1.905 million, and rescheduled the closing date to July 31, 2024.[2] Money Title submitted the Second APA and an amended SBA Loan application to the SBA for approval. Around this time, HWB again promised to fund the Acquisition through a bridge loan, if necessary, and assured Money Title that "even with the remaining unresolved IRS Transcripts Issue, the ' . . . outside date for closing would be August 9th.'" *Id.* ¶ 13 (omission in original).[3] Based on HWB's representations, Money Title informed PLT that it "ha[d] received preliminary approval for an in-house bank loan in the event that the IRS transcripts aren't delivered as quickly as expected," and that it should be able to close by the end of August. *Id.* ¶ 14. But when Money Title asked HWB about the bridge loan on August 21, 2024, HWB responded on August 28, 2024 that it had decided not to pursue that option because, at that point, the SBA Loan could be finalized faster than a bridge loan. HWB also told Money Title that it was still waiting for PLT's

---

[2]Money Title and PLT subsequently agreed to defer the closing date to August 30, 2024.

[3]HWB was unable to finalize the SBA Loan by August 9, 2024 due to the unresolved IRS transcript issues.

second IRS transcript, and that, once that was received, it would take five days to close.

Following this conversation with HWB, Money Title informed PLT that Money Title could not close on August 30, 2024 because HWB had not yet received PLT's second IRS transcript. PLT responded that it was "disappointing" that the bridge loan "did not pan out," because it was PLT's understanding that HWB "would do an in-house bridge loan to get us closed," and that "the in-house loan was our failsafe to ensure we could close by August 30." *Id.* ¶ 16.

HWB received PLT's second IRS transcript on August 30, 2024. Based on HWB's representation that it would take five days to close after it received this transcript, PLT agreed to extend the closing date to September 13, 2024. HWB, however, was not ready to close on September 13. PLT agreed to another brief extension of the closing date to September 17, 2024, but HWB was still not ready to close on that date.

The Second APA expired by its terms on September 17, 2024. On September 19, 2024 PLT contacted Money Title to advise that it was still willing to close the Acquisition, but only if Money Title would agree to modify the Second APA to exclude as an asset a $371,643.73 fee on a dormant file ("Fee") that PLT learned on the afternoon of September 18, 2024 had now become payable. Money Title agreed to PLT's demand, modified Second APA to carve out the Fee, and closed the Acquisition within the next day.

Money Title then filed the instant lawsuit against HWB in state court, alleging, *inter alia*, that HWB's failure to provide a bridge loan, as promised, significantly reduced the value of the Acquisition by at least $371,643.73. Money Title asserts five claims under

- 4 -

Texas law: breach of contract, promissory estoppel, fraudulent inducement, negligent misrepresentation, and negligence. HWB removed the case to this court based on diversity jurisdiction, and now moves to dismiss under Rules 12(b)(6) and 9(b). Money Title opposes the motion, which the court is deciding on the briefs, without oral argument.

## II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive HWB's motion to dismiss, Money Title must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (second alteration in original) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim

- 5 -

showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id*. (quoting *Twombly*, 550 U.S. at 555).[4]

III

The court begins with Money Title's breach of contract claim, which HWB moves in part[5] to dismiss based on the statute of frauds.

A

Money Title alleges that HWB materially breached its contract with Money Title by, *inter alia*, failing to provide a bridge loan to Money Title so that the PLT Acquisition could

---

[4]"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp*., 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013) (per curiam). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id*. (quoting *Benchmark Elecs*., 343 F.3d at 724). More colloquially, a plaintiff must plead the "who, what, when, where, and how" of the fraud. *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp*., 125 F.3d 899, 903 (5th Cir. 1997)). The court need not address Rule 9(b) because it is granting HWB's Rule 12(b)(6) motion to dismiss.

[5]Money Title alleges that HWB breached its May 15, 2024 contract by "repeatedly causing and/or contributing to delays in rescheduled closing dates." Pet. (ECF No. 1-3) ¶ 22. Because HWB does not move to dismiss this ground of Money Title's contract claim, it remains pending.

close on May 31, 2024; failing to provide a bridge loan to Money Title so that the PLT Acquisition could close on any of the subsequently rescheduled closing dates; never initiating its internal processes for the review and approval of a bridge loan; unilaterally withdrawing and reneging on its promise and agreement to provide a bridge loan to Money Title to guarantee the timely closing of the PLT Acquisition; and repeatedly causing and/or contributing to delays in rescheduled closing dates. Pet. (ECF No. 1-3) ¶ 22.

Under the Texas statute of frauds, "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Bus. & Com. Code Ann. § 26.02(b) (West 2023). It is undisputed that HWB's alleged promise to provide a bridge loan involved an amount that exceeded $50,000 and that it was not in writing or signed by either party. Accordingly, unless one of the exceptions to the statute of frauds applies,[6] Money Title cannot recover for breach of the agreement to provide a bridge loan.

---

[6]In addition to the partial performance exception, discussed below, Texas courts —under what has become known as the *"Moore" Burger* doctrine—recognize promissory estoppel as an equity-based exception to the statute of frauds. *See Nagle v. Nagle*, 633 S.W.2d 796, 799-800 (Tex. 1982) ("[C]ourts will enforce an oral promise to sign an instrument complying with the Statute of Frauds if: (1) the promisor should have expected that his promise would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid injustice.") (citing *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 934 (Tex. 1972))). Money Title does not contend that the promissory estoppel exception to the statute of frauds applies in this case.

B

Money Title contends that, under the partial performance exception to the statute of frauds, its claims are not unenforceable. *See* P. Br. (ECF No. 19) at 2 ("Plaintiffs' claims are exempt from the statute of frauds under the partial performance exception.").

"Under the partial performance exception to the statute of frauds, contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App. 2002, pet. denied) (citation omitted). "Virtual fraud" arises "when there is strong evidence establishing the existence of an agreement and its terms, the party acting in reliance on the contract suffered a substantial detriment for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit." *Brooks v. Wycough*, 2025 WL 51842, at *4 (Tex. App. Jan. 8, 2025, pet. denied) (mem. op.) (citing *Breezevale*, 82 S.W.3d at 439). "The acts of part performance must be 'unequivocally referable to the agreement and corroborative of the fact that a contract actually was made.'" *Williams v. Wells Fargo Bank, N.A.*, 560 Fed. Appx. 233, 239 (5th Cir. 2014) (per curiam) (quoting *Breezevale*, 82 S.W.3d at 439). "Performance is only unequivocally referable to the agreement when there is no other possible reason for performance." *Owens v. Specialized Loan Servicing, L.L.C.*, 694 Fed. Appx. 950, 956 (5th Cir. 2017) (per curiam).

C

Assuming *arguendo* that the partial performance exception to the traditional statute

of frauds applies to § 26.02,[7] the court holds that Money Title has not plausibly alleged acts of partial performance that are "unequivocally referable to the agreement and corroborative of the fact that a contact actually was made." *Breezevale*, 82 S.W.3d at 439.  As stated above, "[p]erformance is only unequivocally referable to the agreement when there is no other possible reason for performance." *Owens*, 694 Fed. Appx. at 956; *see also*, *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 426-27 (Tex. 2015) (per curiam) ("[T]he purpose of the alleged acts of performance must be to fulfill a specific agreement.  If the evidence establishes that the party who performed the act that is alleged to be partial performance could have done so for some reason other than to fulfill obligations under the oral contract, the exception is unavailable.").  "If the performance does not precisely establish the specific contract sought, the statute of frauds still applies." *Chase v. Hodge*, 95 F.4th 223, 230 (5th Cir. 2024) (citing *Nat'l Prop. Holdings*, 453 S.W.3d at 426-27).  Money Title's acts of performance—withdrawing its loan application from Wells Fargo, and not seeking alternative financing—could be explained by Money Title's belief that HWB, as opposed to Wells Fargo or any other bank, would be able to close the Acquisition on time. *See* Pet. (ECF No. 1-3) ¶ 11 ("the only condition the parties discussed and agreed upon was the SBA's approval of [Money Title]'s SBA Loan application, including, without limitation,

---

[7]*See Montalvo v. Bank of Am. Corp.*, 864 F.Supp.2d 567, 592 (W.D. Tex. 2012) ("[N]o Texas court has clearly stated that the partial-performance exception applies to the loan-agreement statute of frauds."); *Bank of Tex. v. Gaubert*, 286 S.W.3d 546, 554 (Tex. App. 2009, pet. dism'd w.o.j.) ("No case has expressly held that the equitable exceptions to the traditional statute of frauds also apply to section 26.02.").

*guaranteeing the closing of the* [*Acquisition*] *by May 31, 2024* by means of a bridge loan, *if necessary*." (emphasis added)).  Money Title has not plausibly alleged acts of performance that unequivocally support the existence of an oral contract to provide a bridge loan. Moreover, even if Money Title could plausibly plead that the partial performance exception to the statute of frauds applies, "the doctrine of partial performance also requires that the party acting in reliance on the agreement suffer a substantial detriment for which there is no adequate remedy."  *Breezevale*, 82 S.W.3d at 441 (citing cases).  If Money Title were successful in establishing that the oral agreement is not subject to the statute of frauds because of partial performance, it would only be entitled to reliance damages.  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549 (5th Cir. 2010) (citing *Breezevale*, 82 S.W.3d at 441); *see also Wade v. XTO Energy Inc*., 2013 WL 257361, at *5 (Tex. App. Jan. 24, 2013, no pet.) (mem. op.) ("When promissory estoppel or partial performance applies to except an agreement from compliance with the statute of frauds, the party is entitled to only reliance damages, not benefit-of-the-bargain damages." (citing cases)).  But Money Title has not pleaded that it incurred reliance damages.  "Reliance damages . . . reimburse one for expenditures made towards the execution of the contract in order to restore the status quo before the contract."  *Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App. 2006, pet. denied) (quoting *Hart v. Moore*, 952 S.W.2d 90, 97 (Tex. App. 1997, pet. denied)) (providing examples of damages recoverable for a negligent misrepresentation claim).  They "are measured as the out-of-pocket expenditures made by one party in reliance on the actions of another party, not by the amount of lost profits and sales."  *Sterling Chems., Inc. v. Texaco*

*Inc.*, 259 S.W.3d 793, 798 (Tex. App. 2007, pet. denied) (emphasis omitted)).  Money Title alleges that it was damaged by the significant "reduc[tion in] the value" of the Acquisition by at least $371,643.73.  Pet. (ECF No. 1-3) ¶ 23.

Accordingly, because Money Title has not plausibly pleaded an exception to the statute of frauds, which otherwise applies to render unenforceable HWB's alleged oral contract to provide a bridge loan, the court grants HWB's motion to dismiss Money Title's breach of contract claim to the extent it is based on the promise to provide a bridge loan.

IV

The court next considers Money Title's claims for promissory estoppel, fraudulent inducement, and negligent misrepresentation, all of which HWB moves to dismiss based on the statute of frauds.

A

In support of its promissory estoppel claim, Money Title alleges that HWB promised that it would provide a bridge loan to guarantee the closing of the Acquisition on May 31, 2024; that Money Title substantially relied on HWB's "promises of a bridge loan to its detriment," Pet. (ECF No. 1-3) ¶ 26; and that HWB's "failure to honor its promise to provide a bridge loan damaged [Money Title], significantly reducing the value of the [Acquisition] by at least the amount of $371,643.73," *id.* ¶ 28.

"A claim of promissory estoppel generally cannot be used to circumvent Texas' statute of frauds, which requires certain 'promises' to be in writing." *Thompson v. Bank of Am., N.A.*, 13 F.Supp.3d 636, 649 (N.D. Tex. 2014) (Boyle, J.) (citation omitted).  It is only

when the promise at issue is "a promise to sign an already existing written agreement that would itself satisfy the requirements of the statute of frauds," that a promissory estoppel claim can survive the application of Texas' statute of frauds. *George-Baunchand v. Wells Fargo Home Mortg., Inc.*, 2011 WL 6250785 at *8 (S.D. Tex. 2011) (citation omitted); *see also Leach v. Conoco, Inc.*, 892 S.W.2d 954, 959 (Tex. App. 1995 writ dism'd w.o.j.) ("When seeking to estop the assertion of an otherwise valid Statute of Frauds defense, the oral promise relied upon must be to sign a written agreement that satisfies the statute, or there must be substantial reliance upon an oral misrepresentation that the statute has been satisfied." (citations omitted)).

Here, the promise at issue—to provide a bridge loan—created an oral contract that, as explained above, is unenforceable under the statute of frauds. *See* Tex. Bus. & Com. Code Ann. § 26.02(b). In addition, the promise at issue is not alleged to have been a promise "to sign an already existing written agreement that would itself satisfy the requirements of the statute of frauds." *George-Baunchand*, 2011 WL 6250785 at *8. Because the allegations in Money Title's state-court original petition do not state a claim for promissory estoppel that could overcome, or circumvent, the statute of frauds, Money Title has not stated a claim for promissory estoppel on which relief can be granted.

Accordingly, the court grants HWB's motion to dismiss Money Title's promissory estoppel claim.

B

For largely the same reasons, the court grants HWB's motion to dismiss Money

- 12 -

Title's fraudulent inducement claim, which is based on the allegation that HWB fraudulently induced it to switch its business from Wells Fargo to HWB by falsely or recklessly promising to provide a bridge loan when it had no intention of doing so. Pet. (ECF No. 1-3) ¶ 30.

"The statute of frauds may bar a claim for fraudulent inducement when a party casts the complaint in the form of a fraud cause of action, but is actually attempting to recover damages for breach of an unenforceable oral contract." *Garza v. Robinson*, 2013 WL 3326465, at *4 (Tex. App. June 27, 2013, no pet.) (mem. op.) (citation omitted); *see also Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001) ("[T]he Statute of Frauds bars a fraud claim to the extent the plaintiff seeks to recover as damages the benefit of a bargain that cannot otherwise be enforced because it fails to comply with the Statute of Frauds."). Here, Money Title is seeking to recover what it would have gained had the oral promise been enforced. *See* Pet. (ECF No. 1-3) ¶ 31 ("[HWB]'s fraudulent inducement, i.e., its false promise to provide a bridge loan to [Money Title] to guarantee the closing date for the [Acquisition], damaged [Money Title] by significantly reducing the value of the [Acquisition] by at least the amount of $371,643.73."). In other words, the basis for its cause of action is the breach of the unenforceable oral promise to provide a bridge loan. Money Title's fraudulent inducement claim "cannot, as a matter of law, be used to circumvent, or displace, compliance with Texas' statute of frauds." *Austin v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 13042515, at *4 (S.D. Tex. Apr. 4, 2012) (citations omitted), *rec. adopted*, 2012 WL 13042516 (S.D. Tex. Apr. 26, 2012); *see also Salazar v. BAC Home Loans Servicing, LP*, 2012 WL 995296, at *3 (N.D. Tex. Mar. 23, 2012) (Lindsay, J.) (holding that the fact that

- 13 -

plaintiff "couch[ed] her claim as a cause of action for fraud does not shield it from the statute of frauds"); *Zaremba v. Cliburn*, 949 S.W.2d 822, 827 (Tex. App. 1997, writ denied) ("Texas courts have uniformly looked with disfavor on litigants seeking to bypass the statute of frauds by pleading other causes of action.")

Accordingly, the court grants HWB's motion to dismiss Money Title's fraudulent inducement claim.

C

Money Title's negligent misrepresentation claim also fails. As with Money Title's fraudulent inducement claim, "a claim of negligent misrepresentation may not be used to circumvent the statute of frauds." *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Therefore, when a negligent misrepresentation claim has its "nucleus in an alleged oral contract which is unenforceable under the statute of frauds, the statute of frauds" bars the negligent misrepresentation claim as well. *Hua v. Wells Fargo Bank, Nat'l Ass'n*, 2014 WL 5877909, at *2 (S.D. Tex. Nov. 11, 2014) (quoting *Foster v. Bank One Tex. NA*, 54 Fed. Appx. 592 (5th Cir. 2002) (per curiam)); *see also Weakly v. East*, 900 S.W.2d 755, 759 (Tex. App. 1995, writ denied) ("Even if the Weaklys justifiably relied on East's statement that he would purchase their property, they are precluded from proving that East agreed to do so because of the statute of frauds. This tort, like the others, has as its nucleus East's unenforceable oral contract to buy their property."); *Collins v. Allied Pharmacy Mgmt., Inc.*, 871 S.W.2d 929, 936 (Tex. App. 1994, no pet.) ("Where a plaintiff is seeking to recover what he would have gained had the promise been performed, the gist of his cause

of action is the breach of the unenforceable promise, and is barred by the statute of frauds." (citation omitted)).

Money Title's negligent misrepresentation claim is based essentially on the same factual allegations as its contract claim.[8]    And the damages it seeks to recover—the "significant[] reduc[tion in] the value of the [Acquisition] by at least the amount of $371,643.73," Pet. (ECF No. 1-3) ¶ 36—are clearly tied to HWB's alleged breach of the unenforceable promise to provide a bridge loan.    Although Money Title asserts that it "justifiably relied" on HWB's misrepresentation regarding the availability of a bridge loan, *id*. ¶ 34, it does not seek reliance damages.[9]    Accordingly, the court holds that, because the statute of frauds bars Money Title's contract cause of action (to the extent based on the alleged oral promise to provide a bridge loan), it also forecloses Money Title's negligent misrepresentation claim.

---

[8]Money Title alleges, *inter alia*, that HWB represented that it would provide a bridge loan to Money Title to guarantee the closing date of the Acquisition; that HWB's "offer of a bridge loan to [Money Title] as part of the complete lending services being offered to [Money Title] to guarantee the scheduled closing date for the [Acquisition] was false information provided by [HWB] to [Money Title] for its guidance in deciding whether to continue working with Wells Fargo to obtain an SBA Loan or switch to [HWB]," Pet. (ECF No. 1-3) ¶ 33; that it justifiably relied on HWB's representations, including the availability of a bridge loan; and that HWB's negligent misrepresentation proximately caused damage to Money Title by significantly reducing the value of the Acquisition by at least $371,643.73.

[9]"Texas courts adopt the Second Restatement's view that plaintiffs may recover reliance damages for negligent misrepresentation because these damages are distinct from 'economic losses recoverable under a breach of contract claim.'"    *Container Store, Inc. v. Fortna Inc*., 2021 WL 1250334, at *6 (N.D. Tex. Apr. 5, 2021) (Boyle, J.) (citing cases).

V

HWB moves to dismiss Money Title's negligence claim based on the economic loss rule.[10]

A

"The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam) (citations omitted). Not all tort claims, however, "arising out of a contractual setting" are precluded by the rule. *Id*. To determine whether the economic loss rule bars a tort claim, the court must "analyze[] both the source of the duty and the nature of the remedy." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998). If "the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit," the economic loss rule does not apply. *Chapman Custom Homes*, 445 S.W.3d at 718 (citations omitted); *see also Sullivan v. PS Funding Inc.*, 2021 WL 3556958, at *2 (N.D. Tex. July 15, 2021) (Toliver, J.) ("[I]f the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff may bring a tort claim in addition to a claim for breach of contract."),

---

[10]HWB moves to dismiss Money Title's negligent misrepresentation on this same ground. Because the court concludes that Money Title's negligent misrepresentation claim, as pleaded, is barred by the statute of frauds, it does not address whether the economic loss rule also bars Money Title's negligent misrepresentation claim.

*rec. adopted*, 2021 WL 3553483 (N.D. Tex. Aug. 11, 2021) (Kinkeade, J.).

B

In support of its negligence claim, Money Title alleges that HWB owed it a "legal duty of reasonable care to accurately and fully represent the type and availability of the lending services being offered[,] to competently conduct its due diligence[,] and to timely handle, process and close the loan represented to [Money Title] and described and offered in the Commitment Letter." Pet. (ECF No. 1-3) ¶ 38. Money Title asserts that HWB breached this duty by

> (i) promising [Money Title] that it would provide a bridge loan to guarantee closing of the [Acquisition] on scheduled closing dates but never initiating its own internal process for review and approval of a bridge loan for [Money Title]; and (ii) causing and/or contributing to delays in closing the [Acquisition] by making last minute demands for additional documents and information that [HWB] either had in its possession or should have acquired earlier.

*Id.*

HWB moves to dismiss Money Title's negligence claim on the ground that it is based on an alleged oral promise to extend a bridge loan and the only injury alleged is economic loss to the subject of the alleged contract. Money Title responds that the economic loss rule does not bar its negligence claim because it is "based on Defendant's independent duties to avoid making false representations and to exercise reasonable care in communications regarding loan approval and funding." P. Br. (ECF No. 19) at 5. Money Title cites *Sloane* for the proposition that the Supreme Court of Texas "adopted the Restatement (Second) of

- 17 -

Torts' duty of reasonable care and applied it to a bank's duty when providing information to customers or potential customers," *Id*. Money Title argues that "negligence and negligent misrepresentation are viable alternative claims if no contract existed," *id.* at 5-6.

C

To the extent that Money Title bases its negligence claim on HWB's alleged failure to initiate its own internal process for review and approval of a bridge loan, the court raises *sua sponte*[11] that Money Title has not plausibly alleged that HWB had a legal duty to initiate such a process.

One of the essential elements of a negligence claim under Texas law is the existence of a legal duty. A negligence claim under Texas law "consists of three elements: 1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach." *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (citations omitted). "The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995) (citation omitted).

Money Title seems to suggest in its response brief that an unenforceable oral contract

---

[11]A district court has the authority to consider the sufficiency of a complaint and dismiss a claim *sua sponte*, as long as the procedure it employs is fair. *See, e.g.*, *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 733-34 n.7 (N.D. Tex. 2011) (Fitzwater, C.J.) (noting that district court has authority to consider sufficiency of complaint and dismiss action on its own motion as long as procedure employed is fair, raising ground for dismissal *sua sponte*, and concluding that procedure was fair because court was granting leave to replead). Here, because the court is granting Money Title leave to replead, it can raise Rule 12(b)(6) dismissal *sua sponte*.

can create a legal duty that is sufficient to support a "viable" alternative negligence cause of action under the Supreme Court of Texas' decision in *Sloane*. P. Br. (ECF No. 19) at 5-6. But *Sloane* does not stand for the proposition, as Money Title argues, that a plaintiff can rely on an alternative negligence claim to recover for the breach of an oral agreement that is unenforceable under the statute of frauds.[12] As pleaded, the only possible source of a legal duty to initiate HWB's internal process for review and approval of a bridge loan is its unenforceable oral promise to do so. Because Money Title has not plausibly alleged another source of a duty, the court grants HWB's motion to dismiss Money Title's negligence claim based on the failure to initiate HWB's internal process for review and approval of a bridge loan, albeit on the basis, raised *sua sponte*, that Money Title has not plausibly pleaded that HWB had a legal duty to do so.

### D

To the extent that Money Title bases its negligence claim on HWB's causing and/or contributing to delays in closing the Acquisition by making last minute demands for additional documents and information it either had in its possession or should have acquired earlier, the court holds that this claim is barred by the economic loss rule.

As set out above, the economic loss rule "generally precludes recovery in tort for

---

[12]Moreover, the court in *Sloane* held that the plaintiffs could recover "for damages suffered in reliance upon [the] negligent misrepresentation, *but not for the failure to obtain the benefit of the bargain*." *Sloane*, 825 S.W.2d at 443. As currently pleaded, the damages that Money Title seeks in this case are the reduction in the value of the Acquisition by at least $371,643.73, which allegedly would not have occurred had it received the benefit of the bargain.

economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007). "In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Id.* at *12-13 (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) ("When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone.")).

In its state-court original petition, Money Title alleges that HWB had a duty "to competently conduct its due diligence and to timely handle, process[,] and close the loan represented to [Money Title] and described and offered in the Commitment Letter." Pet. (ECF No. 1-3) ¶ 38. In other words, the duty that HWB allegedly breached is its *contractual obligation* (presumably as set out in the Commitment Letter), not an independent tort duty. Money Title has not plausibly alleged, nor does it argue in its response brief, that HWB's causing and/or contributing to delays in the Acquisition breached any duty independent of the parties' contract. Nor does Money Title dispute that its alleged injury, i.e., "damage to [Money Title caused] by substantially reducing the value of the [Acquisition] by at least the amount of $371,643.73," *id.* ¶ 39, is contractual in nature.

Accordingly, to the extent that Money Title brings a negligence claim based on HWB's causing and/or contributing to delays in closing the Acquisition, the court grants

HWB's motion to dismiss based on the economic loss rule.[13]

VI

In its response to HWB's motion to dismiss, Money Title requests leave to amend its pleadings to cure "any deficiencies identified." P. Br. (ECF No. 19) at 8. "Because the court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead, the court will give [Money Title] an opportunity to amend [its] complaint." *Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F.Supp.3d 681, 707 (N.D. Tex. 2014) (Fitzwater, C.J.) (citing *In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.)). Money Title must file its first amended complaint no later than 28 days after the date this memorandum opinion and order is filed.

*  *  *

For the reasons explained, the court grants HWB's motion to dismiss, and also grants Money Title leave to replead.

**SO ORDERED**.

January 5, 2026.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[13]As noted, the court is not dismissing the component of Money Title's breach of contract claim that is based on HWB's allegedly repeatedly causing and/or contributing to delays in rescheduled closing dates. *See supra* note 5.

- 21 -